IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-873-FL

| | | |
|---|---|---|
| BOBBIE A. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| TYCO ELECTRONICS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to dismiss for failure to state a claim. (DE 12). The motion has been fully briefed, and in this posture issues raised are ripe for ruling. For the reasons that follow, defendant's motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff initiated this action September 21, 2016, in the General Court of Justice Superior Court Division for Harnett County, North Carolina, seeking reinstatement of employment, compensatory and punitive damages, and other ancillary relief arising from defendant's alleged acts of employment discrimination and retaliation in violation of the North Carolina Equal Employment Practices Act ("NCEEPA"), loosely pleaded in the first three claims for relief. Plaintiff alleges in three separate tort-based claims the following: 1) wrongful termination; 2) intentional infliction of emotional distress; and 3) negligent infliction of emotional distress. Defendant removed the case to this court October 27, 2016, on the basis of diversity jurisdiction.

Defendant filed the instant motion November 28, 2016, seeking dismissal for failure to state a claim as to plaintiff's claims for NCEEPA violations as well as plaintiff's claims of intentional and

negligent infliction of emotional distress. Defendant also seeks dismissal as to plaintiff's claim of wrongful termination on the ground that the claim either never existed under North Carolina law or is time-barred. Finally, defendant seeks dismissal as to plaintiff's remaining claims for damages and other relief on the ground that such claims do not constitute independent causes of action.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Defendant is engaged in the business of assembling, packing, and shipping electronic components. Plaintiff, a resident of Harnett County, North Carolina, became defendant's employee May 15, 1990. In her complaint, plaintiff alleges problems arising no later than early 2015 between plaintiff and her supervisors.

At a company meeting held January 6, 2015, with plaintiff, defendant's manufacturing supervisor, Robert Yarborough ("Yarborough"), and plant manager, Mark Johnson, Yarborough engaged in angry outbursts. Plaintiff contends he yelled at her and slapped his hands near plaintiff's face. (DE 1-1 ¶ 15). Defendant took no action to address Yarborough's behavior. (Id. ¶ 16).

At other times, defendant's supervisor, Raphael Marconi ("Marconi"), responded negatively to plaintiff's suggestions, belittling plaintiff by stating in response to her comments that "he had a wife[,]" and, after forming his hand in a manner to mime choking, told plaintiff "[y]ou better be glad this table is between us." (Id. ¶ 11). Yet another of defendant's supervisors, Martin Ramirez ("Ramirez"), belittled plaintiff and often said "[w]e have to keep the young guys happy because they are the future of the company[.]" (Id. ¶ 13).

Following these events, plaintiff filed an internal complaint with defendant's human resources department February 13, 2015, alleging employment discrimination. (Id. ¶ 18). On the same day, defendant's human resources director, Emily Du, without first allowing plaintiff to

describe her version of the January 6, 2015, incident involving Yarborough, instructed plaintiff to undergo anger management training. (Id. ¶ 17).

On March 18, 2015, Betsy Boger, another human resources director for defendant, notified plaintiff that her February 13, 2015, complaint had been investigated, which concluded in plaintiff's favor, (id. ¶ 19), even though defendant's investigator never discussed the January 6, 2015, incident with plaintiff. (Id. ¶ 23). Also on March 18, 2015, defendant issued to plaintiff a "performance improvement plan[,]" which outlined several areas of concern not described in the complaint. (Id. ¶¶ 20–21). Plaintiff already had addressed the areas of concern outlined in the performance improvement plan weeks before the plan issued. (Id. ¶ 22).

On March 21, 2015, plaintiff filed another internal complaint alleging retaliatory employment discrimination. (Id, ¶ 24). On the same day, Brandon Burton, employed by defendant as a human resources generalist, informed plaintiff that she was being suspended without pay because she had an open retaliation claim and management did not want her at the workplace during the investigation. (Id. ¶¶ 25–26). Defendant terminated plaintiff's employment April 10, 2015. (Id. ¶ 27).

## DISCUSSION

A.    Standard of Review

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.      NCEEPA Violations (First, Second, and Third Claims for Relief)

NCEEPA states, in relevant part, "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . age [or] sex . . . ." N.C. Gen. Stat. § 143-422.2. Although this statute does not provide a private cause of action, Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000), it does support a common law claim for wrongful discharge in violation of public policy. McLean v. Patten Cmtys., Inc., 332 F.3d 174, 720–21 (4th Cir. 2003).

Plaintiff's first three claims are styled, respectively, as claims of age discrimination, sex discrimination, and retaliation, each in violation of NCEEPA. As held above, where a plaintiff can invoke NCEEPA only through a common law claim for wrongful discharge in violation of public policy, and where these claims do not allege wrongful discharge, these claims must be dismissed. See Smith, 202 F.3d at 247.

Plaintiff relies upon a treatise for the proposition that "every case recognizing a viable claim for WDPP (wrongful discharge in violation of public policy) has involved a retaliatory aspect, in

4

which the employee was fired in retaliation for his/her opposition to the employer's actions or instructions." (DE 17 at 2 (citing Laura J. Wetsch, Practitioner's Guide to North Carolina Employment Law, (2d ed. 2016)). Even assuming the quoted observation is correct, the Fourth Circuit has held that "there is no private right of action under North Carolina law for retaliation under [NCEEPA]." McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir. 2003). Accordingly, as held above, where plaintiff's first three claims allege violations of NCEEPA and retaliation in violation of NCEEPA apart from wrongful discharge, these claims cannot survive a motion to dismiss. See id.

C.      Wrongful Discharge in Violation of NCEEPA (Fourth Claim for Relief)

As held above, NCEEPA supplies a public policy basis to support a claim of wrongful discharge in violation of public policy where a plaintiff alleges facts demonstrating termination of employment on the basis of membership in a class protected by NCEEPA, including age or sex. See Smith, 202 F.3d at 247. Accordingly, where plaintiff alleges wrongful discharge on the basis of her age and sex occurring March 10, 2015, plaintiff has stated injury and a cause of action for wrongful discharge based upon NCEEPA.

In support of its position, defendant argues that plaintiff's claim never existed under North Carolina law, as clarified by a 2016 amendment to NCEEPA or the claim is time-barred by a later amendment thereto. On March 23, 2016, the North Carolina General Assembly ("General Assembly") amended NCEEPA to include the language, "[t]his [a]rticle does not create, and shall not be construed to create or support, a statutory or common law private right of action, and no person may bring any civil action based upon the public policy expressed herein." N.C. S.L. 2016-3 § 3.2 introduced as House Bill 2 ("HB2") § 3.2. Then, July 18, 2016, the General Assembly enacted

"an act to restore the state tort claim for wrongful discharge[,]" N.C. S.L. 2016-99, which eliminated the language quoted above from HB2 § 3.2 and, in addition, amended N.C. Gen. Stat. § 1-54 expressly to include actions "[f]or wrongful discharge in violation of the public policy set forth in [NCEEPA]" among actions subject to a one-year statute of limitations. Prior to that time, wrongful discharge was subject to a three-year statute of limitations. See N.C. Gen. Stat. § 1–52(1) (amended 2016); Winston v. Livingstone College, Inc., 210 N.C.App. 486, 489 (N.C. Ct. App. 2011) ("The limitations period for a tort action based upon wrongful discharge in violation of public policy is three years.").

Where North Carolina courts and the Fourth Circuit previously had recognized availability of a cause of action arising from discharge of employment based upon an employee's membership in a class protected by NCEEPA, the text of HB2 § 3.2 expressly precluded a "common law private right of action" on such basis. See HB2, § 3.2. Accordingly, HB2 § 3.2 abrogated the cause of action for wrongful discharge in violation of public policy embodied in NCEEPA, while N.C. S.L. 2016-99 restored same and shortened the limitations period to one year.

Regardless of the foregoing legislative actions, plaintiff's claim for wrongful discharge survives because HB2 § 3.2 does not expressly apply retroactively to claims existing prior to its enactment. Accordingly, where the North Carolina Supreme Court is reluctant to infer retroactive application of a statute, especially where such retroactive operation may destroy a vested right, Smith v. Mercer, 276 N.C. 329, 337 (1970), HB2 § 3.2 is best interpreted as operating only prospectively, thus, having no effect upon plaintiff's preexisting claim.

It follows that plaintiff's claim of wrongful discharge is not time-barred. In Culbreth v. Downing, the North Carolina Supreme Court held that where the General Assembly shortens the

statute of limitations applicable to a given claim, a plaintiff possessing such claim must file the claim within either the previously existing period or within the span of the shortened period keyed off the effective date of the new limitations period, whichever is shorter. 28 S.E. 294, 294 (1897); Best v. Wayne Memorial Hosp., Inc., 147 N.C. App. 628 (N.C. Ct. App. 2001) (same). Thus, the deadline applicable to plaintiff's claim must be either September 21, 2018 (three years after complaint was filed) or July 18, 2017, (one year after the passage of N.C. S.L. 2016-99). Because the latter period is shorter than the former, July 18, 2017, constitutes the deadline for plaintiff to file her claim. See Culbreth, 28 S.E. at 294. Accordingly, where plaintiff filed complaint September 21, 2016, the claim is timely.

Defendant contends that HB2 § 3.2 constitutes a "clarifying" amendment embodying legislative judgment that courts were mistaken from the beginning in recognizing the existence of a cause of action based upon wrongful discharge in violation of NCEEPA. See Ray v. N.C. Dep't. Of Transp., 366 N.C. 1, 9 (2012) ("A clarifying amendment, unlike an altering amendment, is one that does not change the substance of the law but instead gives further insight into the way in which the legislature intended the law to apply from its original enactment."). Accordingly, defendant suggests that plaintiff never possessed a valid claim of wrongful discharge since the cause of action under which she now proceeds did not properly exist under North Carolina law at the time of her claimed injury.

"To determine whether the amendment clarifies the prior law or alters it requires a careful comparison of the original and amended statutes." Ray, 366 N.C. at 10 (quoting Ferrell v. Dep't of Transp., 334 N.C. 650, 659 (1993)). "If the statute initially fails expressly to address a particular point but addresses it after the amendment, the amendment is more likely to be clarifying than

altering." Id. (quotations omitted). Clarifying amendments "do not change the substance of the original law." Ray, 366 N.C. at 11.

This case presents something of an anomaly in applying the foregoing rules where there exist two later-enacted statutes that arguably may affect proper interpretation of NCEEPA as it existed when plaintiff's claims arose in March 2015. Accordingly, where defendant has not demonstrated that HB2 § 3.2 merits priority over N.C. S.L. 2016-99 as a source of authority from which to ascertain legislative intent, the court will consider both statutes in interpreting NCEEPA.

In light of the foregoing observations and comparing the various versions of NCEEPA as amended, HB2 § 3.2 does not constitute a clarifying amendment for two reasons. First, as noted above, the General Assembly titled N.C. S.L. 2016-99 "an act to restore the state tort claim for wrongful discharge[.]" See N.C. S.L. 2016-99 (emphasis added). Where "restore" means "to bring back" that which existed before, Restore, Oxford English Dictionary Online (2017), by use of the word "restore," N.C. S.L. 2016-99 expressly contemplates prior existence of a state tort claim for wrongful discharge in violation of NCEEPA. See id. Second, to effect its purpose of restoring prior cause of action for wrongful discharge, N.C. S.L. 2016-99 simply deletes language added by HB2 § 3.2, which necessarily implies that the General Assembly viewed language predating HB2 § 3.2 as sufficient to create a cause of action for wrongful discharge in violation of NCEEPA.

For the foregoing reasons, defendant's motion to dismiss plaintiff's claim of wrongful discharge in violation of NCEEPA must be denied.

D.      Negligent and Intentional Infliction of Emotional Distress (Fifth and Sixth Claims for Relief)

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3)

severe emotional distress." Waddle v. Sparks, 331 N.C. 73, 82 (1992). To state a claim for negligent infliction of emotional distress, plaintiffs must allege that: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause the plaintiff severe emotional distress." Hickman By & Through Womble v. McKoin, 337 N.C. 460, 462 (1994). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." Waddle, 331 N.C. at 84. Accordingly, to survive a motion to dismiss, a plaintiff must allege emotional distress causing "severe and disabling psychological problems[.]" Id. at 85.

In this instance, plaintiff has not alleged extreme and outrageous conduct. As set forth above, alleged belittling comments lodged against plaintiff by Yarborough, Marconi, and Ramirez may constitute violation of other law, but where plaintiff has alleged only that such comments "led [her] to seek medical treatment for stress and anxiety[,]" (DE 1-1 ¶ 14), plaintiff's allegations do not describe "severe and disabling psychological problems" as required under North Carolina law. See Waddle, 331 N.C. at 85. That is, the fact that plaintiff sought psychological care does not imply that plaintiff's psychological trauma, if any, was sufficiently severe to give rise to a cause of action of negligent or intentional infliction of emotional distress. See id. Plaintiff's remaining allegations of emotional distress (DE 1-1 ¶ 70 ("Management's negligent conduct proximately caused severe emotional distress); ¶ 75 ("The action of Management, constitutes extreme and outrageous conduct and . . . would cause severe emotional distress")) are conclusory in nature and, therefore, cannot survive a motion to dismiss. Nemet Chevrolet, 591 F.3d at 255 (the court does not consider "legal conclusions, elements of a cause of action, [nor] bare assertions devoid of further factual enhancement"). Accordingly, plaintiff's claims for negligent and intentional infliction of emotional

distress must be dismissed.

E.      Ancillary Claims (Seventh, Eighth, and Ninth Claims for Relief)

The Seventh, Eighth, and Ninth claims set out by plaintiff in her complaint do not, as defendant argues, constitute independent causes of action.   They   more properly may be characterized as prayers for relief, hinged on plaintiff's substantive claims.  See Fed. R. Civ. P. 8(a)(3).  To the extent that substantive claim remains, defendant does not advance on motion any specific basis for denial of punitive and compensatory damages, attorneys' fees, and costs.  In this part, the motion is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED IN PART AND DENIED IN PART.   Plaintiff's First through Third and Fifth and Sixth claims are DISMISSED. Plaintiff's Fourth Claim on which it appears she seeks punitive and compensatory damages, attorneys' fees, and costs, is allowed to proceed.  An initial order regarding planning and scheduling will follow.

SO ORDERED, this the 22nd day of May, 2017.


_____
LOUISE W. FLANAGAN
United States District Judge


10