IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-873-FL

| | | |
|---|---|---|
| BOBBIE A. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| TYCO ELECTRONICS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion for summary judgment. (DE 38). The motion has been fully briefed, and, in this posture, the issues presented are ripe for ruling. For following reasons, the motion is granted.

## STATEMENT OF THE CASE

Plaintiff initiated this employment discrimination action September 21, 2016, in the General Court of Justice Superior Court Division for Harnett County, North Carolina, seeking reinstatement of employment, compensatory and punitive damages, and other ancillary relief. Defendant removed the case to this court October 27, 2016, on the basis of diversity jurisdiction.

On May 23, 2017, this court granted in part and denied in part defendant's motion to dismiss. Particularly, the court dismissed plaintiff's first, second, and third claims for relief, in which plaintiff alleged discrimination and retaliation apart from wrongful termination. The court dismissed also plaintiff's claims of negligent and intentional infliction of emotional distress, as pleaded in the fifth and sixth claims for relief, respectively. Finally, the court dismissed plaintiff's prayer for punitive damages pleaded in the seventh claim for relief. Plaintiff's fourth claim for relief, which alleges

wrongful termination in violation of public policy embodied in the North Carolina Equal Employment Practices Act ("NCEEPA"), N.G. Gen. Stat. § 143-422.1 et seq. was allowed to proceed. That lone remaining claim rests on theories of gender discrimination and age discrimination.

Following a period of discovery, defendant filed the instant motion February 19, 2018, seeking summary judgment as to plaintiff's remaining wrongful termination claim. In support of the motion, defendant relies upon the pleadings; declaration of Rafael Marcano ("Marcano") and supporting exhibits, which include e-mail communications regarding plaintiff's work tasks; defendant's employment policies; a promotion letter signed by plaintiff; documentation of plaintiff's internal complaints and resulting investigation; documentation of plaintiff's complaints to the North Carolina Division of Employment Security; plaintiff's discovery responses; plaintiff's deposition; and declaration of Sandra Salisbury.

In opposition, plaintiff relies also upon her deposition; e-mail communications regarding plaintiff's work tasks; a "countermeasures sheet" created by plaintiff; documentary evidence of plaintiff's internal complaints and resulting investigation; and, in addition, plaintiff's record of performance evaluations; record of plaintiff's March 30, 2015, suspension from work; and affidavits of Ashley Parrish and plaintiff.

## STATEMENT OF THE UNDISPUTED FACTS

The undisputed facts viewed in the light most favorable to plaintiff may be summarized as follows. Defendant is a Pennsylvania corporation, with a facility in Fuquay-Varina, North Carolina, and is engaged in the business of manufacturing and selling commercial and industrial electrical components for the utility and electrical industry. (DE 34 ¶¶ 4, 6; DE 39 ¶¶ 4, 6). Plaintiff was

defendant's employee between May 14 or 15, 1990, and April 10, 2015. (Id. ¶ 3; DE 1-1 ¶ 27; DE 25 ¶ 27).

In the course of employment, plaintiff was promoted or transferred to various positions, and by July 2014, plaintiff job title was "Supervisor III Materials Planning." (DE 34 ¶ 11; DE 39 ¶ 11). In this role, plaintiff was responsible to oversee processing of customer work orders. (Id. ¶ 13). The parties refer to employees holding plaintiff's position as "planners." (See id. ¶ 15).

Before plaintiff's promotion or transfer in July 2014, the planners at defendant's Fuquay-Varina location did not meet their "metric goals" relating to measures of customer service including on time delivery, lead time to request (time between customer order and delivery), inventory turns (rate of turnover within defendant's warehouse), quick ship compliance (speed of delivery where customer requests expedited delivery), and amount of overdues (untimely shipments). (Id. ¶¶ 13, 15). In October 2014, plaintiff met with her supervisor, Martin Ramirez ("Ramirez"), who gave plaintiff certain metric goals and told her to reach them. (Id. ¶ 15).

On January 13, 2015, Ramirez emailed plaintiff to express his displeasure with the low number of inventory turns at the Fuquay-Varina plant. (Id. ¶ 17). On February 9, 2015, Ramirez again expressed to plaintiff that the Fuquay-Varina plant was making sufficient progress, and, while plaintiff agreed that the Fuquay-Varina plant was not meeting established goals, plaintiff provided excuses for the poor performance instead of providing an action plan to remedy the problems. (Id. ¶ 18). Similar discussions between Ramirez and plaintiff regarding poor performance at the Fuquay-Varina plant took place through March 2015. (Id. ¶¶ 19, 21–36).

On January 7, 2015, plaintiff became involved in a disagreement with Robert Yarborough ("Yarborough"), who is defendant's supervisor of manufacturing at the Fuquay-Varina plant. (Id.

¶ 38). Yarborough yelled during the meeting, complaining that some employees were idle because certain work orders for which plaintiff was responsible had not been processed. (Id. ¶¶ 38–40). The parties dispute aspects of the disagreement between plaintiff and Yarborough; however, it is undisputed that defendant's human resources investigator, on initial review, found that plaintiff acted unprofessionally while Yarborough did not. (Id. ¶ 44). Nonetheless, plaintiff persisted in her complaints about Yarborough's behavior, and upon a second investigation, a different human resources investigator found that Yarborough's behavior at the January 7 meeting also was unprofessional. (Id. ¶ 46).

At times relevant to this action, Marcano served as defendant's director of operations for energy in the Americas. On at least one occasion, plaintiff asked Marcano a work-related question about use of rack space to house inventory. Marcano responded using a metaphor suggesting that plaintiff could not use additional rack space because she would simply fill the space as Marcano's wife fills increasingly large closets. (DE 40 at 22–23). Subsequently, Marcano approved a "performance improvement plan" ("PIP") for plaintiff. (DE 34 ¶ 57; DE 39 ¶ 57). Plaintiff refused to sign the PIP while knowing that defendant would treat such refusal to sign as insubordination warranting termination of plaintiff's employment. (Id. ¶¶ 57–61). On April 10, 2015, defendant fired plaintiff. This action followed.

# DISCUSSION

A.  Standard of Review[1]

Summary judgment is appropriate when "there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. In deciding a motion for summary judgment, the court construes evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmovant's favor. Id. at 255.

B.  Analysis

NCEEPA states, in relevant part, "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . age [or] sex . . . ." N.C. Gen. Stat. § 143-422.2.

---

[1] Plaintiff's statement of the standard of review is incorrect in several discreet respects. Plaintiff's citations to North Carolina procedural law are inappropriate in this federal court proceeding. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Moreover, even if North Carolina law did control this issue, it is highly unusual that plaintiff resorts to nearly fifty year old authority from the North Carolina Court of Appeals for a proposition as routine as the standard for summary judgment. This deficiency comes on the heels of plaintiff's failure to conduct discovery with proper diligence, (DE 31), and combines with other filings dense with typographical and grammatical errors. As the court noted recently in another case, plaintiff's counsel must adhere to higher standards in future filings. See Sovereign Guns v. United States Dep't. of Justice, No. 5:16-CV-182-FL, 2018 WL 4572660, at * 1 n.2 (E.D.N.C. Sep. 24, 2018).

Although this statute does not provide a private cause of action, Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000), it does support a common law claim for wrongful discharge in violation of public policy. McLean v. Patten Cmtys., Inc., 332 F.3d 174, 720–21 (4th Cir. 2003).

"Given the similar language and underlying policy of [NCEEPA] and Title VII [of the Civil Rights Act of 1964], 42 U.S.C. § 2000e et seq., the North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under [NCEEPA] insofar as they do not conflict with North Carolina statutes and case law." Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995) (citing North Carolina Dep't. of Corr. v. Gibson, 308 N.C. 131 (1983)). Moreover, with some exceptions, where Title VII and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. exhibit similar language and are indeed "statutory kin," Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir. 1994), the standards applicable to an ADEA claim also govern claims of age discrimination under NCEEPA. See Hughes, 48 F.3d at 1383.

A claim of gender discrimination may proceed under a "mixed-motive" theory whereby plaintiff may demonstrate that gender motivated an adverse employment decision.[2] Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004). On a mixed-motive theory "[an] employee need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail, so long as it was a motivating factor." Id. Under this theory, a plaintiff must "demonstrate that an employer used a forbidden consideration with respect to an[] employment practice." Id. at 285. If plaintiff so demonstrates, defendant may avoid liability only upon proving by a preponderance of the evidence that it would have made the same decision even if it had not taken

---

[2] Although plaintiff does not rely expressly on a mixed-motive theory in her opposition to the instant motion, defendant concedes that a mixed-motive theory is an available basis on which plaintiff may rest her gender-discrimination claim. (DE 33 at 9 n. 6).

6

that factor into account." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 173–74 (2009). A mixed-motive theory is unavailable, however, for age discrimination claims. Id.

In the alternative, plaintiff may use the McDonnell Douglas burden-shifting framework to establish age and gender discrimination claims. See McDonnell Douglas Corp v. Green, 411 U.S. 792, 802–04 (1973). This "framework is a means by which plaintiffs can use circumstantial evidence to create an inference of discrimination." Lightner v. City of Wilmington, N.C., 545 F.3d 260, 265 (4th Cir. 2008). Under this framework, a plaintiff first must establish a prima facie case of discrimination by adducing evidence that she 1) is in a protected group; 2) was discharged; 3) was performing her job at a level that defendant's legitimate expectations at the time of discharge; and 4) was discharged under circumstances that raise a reasonable inference of unlawful discrimination. Gerner v. Cnty of Chesterfield, 674 F.3d 264, 266 (4th Cir. 2012).

If plaintiff establishes these elements, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Lettieri v. Equant Inc., 478 F.3d 640, 646 (4th Cir. 2007) (internal quotations omitted). If the employer meets this burden, the burden shifts back to the plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Pros., Inc., 530 U.S. 133, 143 (2000).

In the instant matter, plaintiff has not adduced sufficient evidence to survive summary judgment on her gender discrimination claim. The only evidence of record arguably pertinent to alleged gender discrimination is plaintiff's deposition testimony wherein she recounts comments made by Marcano. Particularly, on certain occasions, when plaintiff asked Marcano work-related questions, Marcano responded that "he had a wife." (DE 40 at 23). Further, plaintiff testified that

Marcano suggested that plaintiff would not be allowed to use more rack space to house certain inventory because, according to Marcano, plaintiff would simply fill the extra rack space as Marcano's wife fills increasingly large closets.  (DE 40 at 22–23).

The foregoing comments do not constitute any evidence that gender discrimination motivated defendant's decision to terminate plaintiff's employment. Although Marcano's comments invoke notions of gender in some general sense, they fail to support any inference that Marcano viewed gender as a reason to fire plaintiff.  See Hill, 354 F.3d at 286 ("The protected trait 'must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome."). At most, Marcano's comments disclose contempt for plaintiff's questions and perhaps also a negative opinion of his own wife's habits.  However, the foregoing does not support any inference that Marcano considered plaintiff's gender is deciding to approve the PIP that led to plaintiff's discharge. See id. In this manner, plaintiff's gender discrimination cannot proceed under a mixed-motive theory where plaintiff fails to adduce sufficient evidence that gender was "a motivating factor" in defendant's decision to terminate plaintiff's employment.  See id.

Viewing plaintiff's claims through the lens of the McDonnell Douglas framework, the foregoing analysis establishes also that plaintiff's evidence cannot support a prima facie case of discrimination. That is, aside from Marcano's comments, which are insufficient as noted, the record is devoid of any evidence that plaintiff was "discharged under circumstances that raise a reasonable inference of unlawful discrimination."  Gerner, 674 F.3d at 266.  Rather, while the evidence discloses a number of instances of conflict in the workplace, there is no evidence of record that plaintiff was subjected to any adverse employment action due to her gender.

Moreover, defendant's alleged reason for firing plaintiff is that plaintiff engaged in

8

insubordinate conduct by her failure to engage in the PIP process. (DE 34 ¶¶ 54–55; DE 39 ¶¶ 54–55). Plaintiff does not dispute that her performance at work was deficient where planners under plaintiff's supervision did not achieve defendant's "metric goals" for a substantial period of time. (Id. ¶ 18). On its face, the PIP addresses these deficiencies, and plaintiff makes no suggestion that the goals stated in the PIP are unreasonable. (See DE 35 at 49–51). Nonetheless, plaintiff refused to engage in the PIP process and refused even to sign the PIP when it was presented, despite that the PIP states expressly that signature does not indicate any agreement or disagreement with the PIP's terms. (Id. at 51; DE 34 ¶ 61; DE 39 ¶ 61)). These facts establish affirmatively that plaintiff's work performance was deficient and that plaintiff engaged in insubordinate conduct by her refusal to engage in the PIP process, as defendant required. Thus, plaintiff fails to adduce evidence that could sustain her burden to demonstrate that defendant's complaints of plaintiff's inadequate work performance and insubordination constitute a pretext for unlawful gender discrimination. See Lettieri, 478 F.3d at 646. Accordingly, plaintiff's gender discrimination claim fails.

Finally, plaintiff's age discrimination claim has been abandoned where plaintiff offers no argument in support of that claim. (See DE 38 at 6 ("As illustrated above, the evidence, when viewed in the light most favorable to Plaintiff, illustrates that Defendant allowed a practice of discrimination on the basis of sexual identity beginning in 2011.") (emphasis added)). Moreover, the only evidence before the court pertinent to age discrimination is plaintiff's lone statement at deposition that "my age may have played a part in [termination of employment]." (DE 40-1 at 50). Such speculation does not constitute any evidence of age discrimination and, thus, is insufficient to establish any genuine dispute of material fact. See Anderson, 477 U.S. at 250.

In sum, defendant's motion for summary judgment is granted where plaintiff has adduced

9

no evidence of gender discrimination and has abandoned her claim of age discrimination.

## CONCLUSION

For reasons noted, defendant's motion for summary judgment, (DE 32), GRANTED. Plaintiff's remaining claim is DISMISSED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 29th day of September, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge